# Edwards, Hudmon & Co. v. Whyte & Hull.

*Action for Breach of Special Contract for Sale and Delivery of Cotton.*

1. *Charges to jury; how construed.*—Instructions to the jury must be construed in connection with the evidence, and also, when several are

given touching the same matter, in connection with each other; and when thus construed, though each may not be strictly correct as an independent proposition, or may not be very clear in expression, they would not present a reversible error, when any apprehended injury might be avoided by a request for explanatory instructions.

2. *Abstract charge; when reversible error.*—An abstract charge, though erroneous in point of law, will not work a reversal of the judgment, unless it appears the jury were thereby misled to the prejudice of the appellant.

3. *Burden of proof; charges as to.*—When the defendant avers a rescission of the contract sued on, or an excuse for his failure to perform it, he assumes the *onus* of proving such rescission or excuse, and must prove it to the satisfaction of the jury; and a charge which asserts that he "must prove it to the satisfaction of the jury by clear and satisfactory testimony," fairly construed, does not require a higher degree of proof than this.

APPEAL from the Circuit Court of Lee.

Tried before the Hon. H. D. CLAYTON.

This action was brought by Whyte & Hull, suing as partners, against the persons composing the firm of Edwards, Hudmon & Co., "individually and as partners," to recover damages for the breach of a contract alleged to have been entered into by and between the parties, "at Opelika, in said county, on or about November 3d, 1879, in substance as follows: On or about the date aforesaid, and at the place aforesaid, the said plaintiffs, at the special instance and request of the defendants, bargained and agreed to buy of and from them one hundred bales of cotton, of the usual weight, upon the following terms, that is to say: fifty bales of even-running middling cotton at 10.25 cents per pound, and fifty bales of even-running good middling cotton, at 10.50 cents per pound; the entire lot to be delivered by the defendants free, on board the cars at Opelika, within two weeks from the date of sale, to plaintiffs; the defendants agreeing to receive exchange at par in payment for said cotton, and the plaintiffs agreeing to pay said defendants for said cotton, on delivery of the same, at the rate and price specified, for each and every pound thereof, in exchange at par." The breach alleged was the defendants' failure and refusal to deliver the cotton on demand; and the common counts were added to the complaint, by amendment. The judgment-entry recites, that the cause was tried "on issue joined on the plea of the general issue."

On the trial, as the bill of exceptions states, the plaintiffs introduced evidence tending to show that, on November 3d, 1879, they made a contract with defendants for the purchase of one hundred bales of cotton, on the terms specified in the complaint, "and also evidence tending to show that, on October 30th, 1879, there was another contract made between them for the purchase of fifty bales of average middling cotton of the usual weight, at 10.25 cents per pound on delivery, in exchange

at par, delivery to be free on board of cars at Opelika, any time within ten days, at defendants' option; that no cotton was ever actually delivered under either of said contracts, but, on or about November 5th, an attempt to classify cotton under the contract of October 30th was made by H. L. Hull (one of plaintiffs) and T. P. Hudmon (one of defendants), in the defendants' warehouse, where defendants then had about five hundred bales of cotton of various grades; that they agreed on the classification of thirty-seven bales, but a dispute arose as to the grade of the thirty-eight bale, and the attempt was thereupon suspended, and was never renewed; that Whyte (one of plaintiffs) called at defendants' office on the night of said attempted classification and delivery, and said that he regretted said disagreement had happened, and that he hoped their future business relations would be pleasant, and that he would consider the said contract of October 30th as abandoned; but that he did not say, or intend to say, that he would abandon the contract of November, and, on the contrary, said he would not abandon it." Whyte further testified, that said T. P. Hudmon afterwards promised him personally to deliver the one hundred bales of cotton, but subsequently, being asked about it, referred him to J. K. Edwards, one of defendants; that Edwards, when asked about it, "said that he regarded the whole thing as settled; to which Whyte replied, that he did not." "There was evidence also, on the part of the defendants, tending to show that there was only one contract for the purchase of cotton by plaintiffs from defendants; that this contract was made on the 3d or 5th November, 1879, whereby defendants stipulated to deliver to plaintiffs, within two weeks, free on board the cars at Opelika, one hundred and fifty bales of cotton, of the usual weight—fifty bales of average middling, at 10.25 per pound; fifty bales of even-running middling at 10.25 per pound; and fifty bales of even-running good middling, at 10.50 per pound—for which plaintiffs were to pay, on delivery, within two weeks, as above, with exchange at par. There was conflicting evidence, as to whether there was only one contract, or whether there were two contracts, and as to what the terms of the contract or contracts were. The evidence was conflicting, also, as to whether or not there was a rescission of the contract or contracts, or either; and if so, as to what such rescission amounted to, and by whom and how made." The plaintiffs proved, also, a written demand for the cotton, and the failure to deliver it; and the market price of the stipulated qualities of cotton, at the time stipulated for delivery, and at the commencement of the suit.

On this evidence, the court gave the following charges to the jury, on the request of the plaintiffs:

[Edwards, Hudmon & Co. v. Whyte & Hull.]

"1. If the jury believe, from the evidence, that two separate contracts for the purchase of cotton were made by plaintiffs with defendants, one being of fifty bales of average middling cotton, and the other of one hundred bales, of which fifty bales were to be of even-running middling cotton, and the other fifty even-running good middling; if the evidence satisfies the jury of these facts, then the plaintiffs could have cancelled the contract for the fifty bales of average middling; and if the cancellation is shown to have been limited to this lot, then plaintiffs are entitled to recover the damages sustained by defendants' failure to deliver the remaining one hundred bales, if the evidence shows such failure on their part, without a goood reason or excuse.

"2. The burden of proof is on the plaintiffs; but, if the minds of the jury are reasonably satisfied, from all the evidence in the case, that there has been a breach of a valid contract by defendants to deliver cotton to plaintiffs, in not delivering such cotton, then plaintiffs are entitled to a verdict for the difference between the contract price agreed on and the market value of such cotton; unless such delivery was excused by plaintiffs, or unless defendants show a good excuse for such non-delivery.

"3. If the plaintiffs' evidence satisfies the mind of the jury that they have been damaged by the non-delivery of cotton under a valid contract made with defendants, then plaintiffs are entitled to a verdict for such damages as they have proved, unless the defendants show some lawful excuse for the non-delivery, or show that plaintiffs released them from compliance with their contract to deliver; and the burden of proving such excuse or release is cast on the defendants, after plaintiffs make out their case.

"4. If the plaintiffs show the breach of a valid contract by defendants, complied with by plaintiffs so far as, under its terms, they could comply, then the law casts on the defendants the burden of proving a reason or excuse for non-compliance on their part with the terms of such contract.

"5. If the plaintiffs prove satisfactorily to the minds of the jury damages resulting from the breach of a valid contract to deliver cotton, the law casts on the defendants the burden of proving that plaintiffs could have averted such damages by supplying themselves with such cotton as the defendants contracted to deliver.

"6. If the defendants rely on the alleged fact, that there was a rescission of the contract sued on, they must satisfy the jury that there was such a rescission.

"7. If the contract is admitted, or proved to the satisfaction of the jury, and the defendants rely on an alleged rescission of the contract, the burden rests on the defendants to prove such

[Edwards, Hudmon & Co. v. Whyte & Hull.]

rescission to the satisfaction of the jury, by clear and satisfactory evidence."

The defendants excepted to each of these charges, and they now assign them as error.

H. C. LINDSEY, and W. H. BARNES, for appellants.

W. P. PINCKARD, contra.

BRICKELL, C. J.—Instructions to the jury must be construed in connection with the evidence, and when several are given, touching the same matter, in connection with each other. When thus construed, they may not be strictly correct, if taken as separate, independent propositions, and yet may be free from error which would compel a reversal of the judgment. If the first charge of the court had asserted that one party to a contract, without the assent of the other, could rescind it, and relieve himself from its obligations, or for liability to answer for his breach of it, as a legal proposition it would be erroneous. For, it can not be matter of doubt, as a general rule, that, in the absence of fraud, a contract can not be rescinded without the consent of both parties to it. The point of contention, in the court below, was not whether either party, plaintiffs or defendants, could, without the consent of the other, have rescinded the contract. The contention was, first, whether there were two contracts between the parties; the plaintiffs insisting that two had been made, for the purchase of cotton, in different quantities, and of different qualities. The defendants insisted, there was but one contract, for the sale of a specified quantity of cotton, of a particular quality. The plaintiffs insisted, one of the contracts had been, by the assent of both parties, rescinded. The defendants insisted, the one contract which, as they claimed, was made, had been rescinded by the assent of the parties. Upon either theory, the rescission relied upon was not the independent act of either party, but the concurring act of both parties. Construing this instruction as the appellants now construe it, there was no controversy or evidence to which it was applicable, and it was abstract. If abstract, though erroneous in point of law, the error does not authorize a reversal of the judgment.—1 Brick. Dig. 336, § 13. We are disinclined to adopt this construction. When the instruction is construed in connection with the evidence, and with the succeeding instructions, it is plain, the rescission, or cancellation, to which it refers, is of the contract the plaintiffs insisted had been rescinded by mutual consent. The instruction is entitled to a fair construction, though it may not be very clear in expression. If injury from its want of clearness was appre-

24

[Kirby v. Kirby's Administrator.]

hended, the court, on request, would have removed the apprehension, by giving an explanatory charge.

The fourth instruction is the assertion of a mere truism.  A party, averring an excuse for a failure or refusal to perform a contract, assumes the burden of proving the excuse; or, if, as is postulated in the seventh instruction, he avers a rescission of an admitted contract, to excuse non-performance, the *onus* of proving the rescission rests upon him.   Whatever fact a plaintiff is bound to prove to support his action, or a defendant is bound to prove to make out his defense, must be satisfactorily proved. The minds of the jury must be reasonably satisfied of the existence of the fact.   We can not suppose that the court intended to assert that any higher degree of proof than this was required to support the defense.   If the defendant feared, because the words *clear and satisfactory* were conjoined, the jury would be misled, an explanatory instruction would have obviated the misleading tendency, and upon them rested the duty of requesting the instruction.

The judgment is affirmed.